## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------
                                   :
   SHAUN PARKS,                    :
                                   :
        Plaintiff,                 :   CIVIL NO. 08-517 (NLH)
                                   :
   v.                              :
                                   :        OPINION
   COMMISSIONER OF                 :
   SOCIAL SECURITY,                :
                                   :
        Defendant.                 :
                                   :
-----------------------------------
```

**APPEARANCES:**

Gary L. Smith
Gary L. Smith Attorney at Law
1400 People's Plaza
Suite 110
Newark, DE 19702

   *Attorney for Plaintiff*

Dina White Griffin
Social Security Administration - Region III
300 Spring Garden Street
Philadelphia, PA 19123

   *Attorney for Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), to review the final decision of the Commissioner of the

Social Security Administration, denying the application of

Plaintiff for Disability Insurance Benefits and Supplemental

Security Income ("Social Security benefits") under Title II and Title XVI of the Social Security Act.  42 U.S.C. § 401, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, August 6, 2004.  For the reasons stated below, this Court will affirm that decision.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Until 2003, Plaintiff, Shaun Parks, was a heavy user of hallucinogenic drugs and a heavy drinker.  In November 2004, he was admitted for psychiatric evaluation due to hearing voices and hallucinations.  Medications helped, but when he was admitted again in April 2005 for threatening suicide, he was diagnosed with schizoaffective disorder, depressive type.  Hallucinations and voices continued, but by August 2005, medication had significantly diminished the auditory hallucinations.  Plaintiff, however, continued to smoke marijuana daily.  Accordingly, his medication had to be constantly adjusted to account for the marijuana use.  Plaintiff was also diagnosed as being morbidly obese.[1]

---

[1]Plaintiff does not claim that his obesity causes him to be disabled.  Plaintiff also does not appear to claim his substance abuse as a disability, although the ALJ seemed to address it in the context of determining whether it met a listed impairment.  Relatedly, in their opposition brief,

Plaintiff filed an application for disability benefits, claiming that as of August 6, 2004 his schizoaffective disorder rendered him completely disabled and unable to work.  Prior to this time, Plaintiff worked in several semi-skilled positions, such as an assistant manager, cashier, and driver.[2]  After a hearing before an ALJ, it was determined that Plaintiff was not disabled.  Plaintiff appealed the decision, and the Appeals Council denied Plaintiff's request for review.  Plaintiff now seeks this Court's review.

## II.  DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial

the Commissioner focuses on Plaintiff's marijuana use as substantive reason for upholding the ALJ's decision. Specifically, the Commissioner repeatedly cites to a nurse practitioner who treated Plaintiff and repeatedly stated that his auditory and visual hallucinations would completely disappear if he simply stopped using marijuana.  In his reply brief, Plaintiff takes issue with the Commissioner's focus, arguing that considerations of drug addiction can only be made after a finding of disability.  He also challenges the Commissioner's reliance on a nurse practitioner, who Plaintiff argues is not an acceptable medical source.  Because Plaintiff is not challenging the ALJ's consideration of his marijuana use or the ALJ's reference to the nurse practitioner in his appeal, the Court will not address these issues.

[2]Plaintiff worked after his alleged onset date as a pizza delivery driver, but his income did not rise to the level to be considered "substantial gainful activity" to preclude eligibility.  See, *infra*, the discussion of Step One.

3

review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 Fed. Appx.

130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists

6

in the immediate area in which he lives, or whether a specific
job vacancy exists for him, or whether he would be hired if he
applied for work.  42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining
disability that require application of a five-step sequential
analysis.  See 20 C.F.R. § 404.1520.  This five-step process is
summarized as follows:

1.   If the claimant currently is engaged in substantial
     gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe
     impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed
     impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1
     and has lasted or is expected to last for a continuous
     period of at least twelve months, the claimant will be
     found "disabled."

4.   If the claimant can still perform work he has done in
     the past ("past relevant work") despite the severe
     impairment, he will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's
     ability to perform work ("residual functional
     capacity"), age, education, and past work experience to
     determine whether or not he is capable of performing
     other work which exists in the national economy.  If he
     is incapable, he will be found "disabled."  If he is
     capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is
therefore dependent upon a finding that the claimant is incapable
of performing work in the national economy.

7

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

As noted above, despite the fact that Plaintiff worked as a pizza delivery driver in late 2006, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability because that brief period of employment was not sufficient to qualify as "substantial gainful activity." (Step One). The ALJ next found that Plaintiff's schizoaffective disorder and substance abuse to be severe (Step Two). The ALJ then found that even though Plaintiff's impairments did not meet the medical equivalence criteria (Step Three), he was not capable of performing past relevant work (Step Four). The ALJ found,

however, that Plaintiff had the residual functional capacity
(RFC) to perform other jobs which are in significant numbers in
the national economy (Step Five).

Plaintiff presents three arguments for review: (1) the ALJ
erred in determining Plaintiff's functional limitations; (2) the
ALJ erred in determining Plaintiff's mental residual functional
capacity, and (3) the ALJ erred in relying upon a flawed
hypothetical question he presented to the vocational expert.

**1. Whether the ALJ's determination of Plaintiff's functional
limitations is supported by substantial evidence**

Determining a claimant's functional limitations due to a
mental impairment is "a complex and highly individualized
process."  20 C.F.R. § 404.1520a.  An ALJ will rate the degree of
a claimant's functional limitation based on the extent to which
his impairment interferes with his ability to function
independently, appropriately, effectively, and on a sustained
basis.  Id.  The ALJ will consider such factors as the quality
and level of a claimant's overall functional performance, any
episodic limitations, the amount of supervision or assistance the
claimant requires, and the settings in which a claimant is able
to function.  Id.  Further, the ALJ will consider four broad
functional areas to rate the degree of a claimant's functional
limitation: Activities of daily living; social functioning;

concentration, persistence, or pace; and episodes of
decompensation.  Id.   The ALJ will then rate these areas on a
scale: the first three functional areas are rated "none, mild,
moderate, marked, and extreme," while the fourth functional area
is rated as "none, one or two, three, four or more."  Id.
If the ALJ finds either "none" or "mild" limitations, then a
claimant's condition is not "severe," and, thus, the claimant
will be denied benefits (Step Two).  Id.  If the ALJ finds that
the impairment is severe, the ALJ will determine whether it meets
a listed impairment at Step Three.  Id.  If it is severe, but
does not meet a listed impairment, then the ALJ will consider the
claimant's residual functional capacity.  Id.

     Plaintiff contends that the ALJ erred in making his
evaluation of Plaintiff's functional limitation.  Plaintiff,
however, does not specifically articulate how the ALJ failed in
this analysis.  The ALJ found that Plaintiff's mental impairment
is severe, but that it does not meet a listed impairment.
Ostensibly, Plaintiff does not dispute the ALJ's finding that his
mental impairment is severe.  If Plaintiff is challenging the
ALJ's determination that the mental impairment does not meet a
listed impairment, Plaintiff has not stated which listed
impairment the ALJ should have considered.

     The ALJ determined that Plaintiff's mental impairment did

not meet 12.04 (Affective Disorders) or 12.09 (Substance
Addiction Disorders) in the listings.  Although not articulated
by Plaintiff, through his general challenge to the ALJ's
functional capacity determination it appears that Plaintiff
believes that his condition qualifies as either 12.04 and/or
12.09.  Thus, the Court will construe this to be Plaintiff's
argument.

In order to meet 12.04 or 12.09, the ALJ must find that a
claimant's impairment consists of, *inter alia*, two of the
following: 1. Marked restriction of activities of daily living;
2. Marked difficulties in maintaining social functioning; 3.
Marked difficulties in maintaining concentration, persistence, or
pace; or 4. Repeated episodes of decompensation, each of extended
duration.  Appendix 1 to Subpart P of Part 404 (12.04, Paragraph
B).  Or, the ALJ must find a medically documented history of a
chronic affective disorder of at least 2 years' duration that has
caused more than a minimal limitation of ability to do basic work
activities, with symptoms or signs currently attenuated by
medication or psychosocial support, and one of the following: 1.
Repeated episodes of decompensation, each of extended duration;
or 2. A residual disease process that has resulted in such
marginal adjustment that even a minimal increase in mental
demands or change in the environment would be predicted to cause

11

Case 1:08-cv-00517-NLH   Document 23   Filed 12/10/09   Page 12 of 21 PageID #: 106

the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.  Appendix 1 to Subpart P of Part 404 (12.04, Paragraph C).

Here, the ALJ found that Plaintiff's mental impairment did not cause at least two marked limitations or at least one marked limitation and repeated episodes of decompensation, thus not satisfying Paragraph B.  The ALJ also found that Plaintiff's mental impairment did not satisfy Paragraph C.[3]  In support of his findings, the ALJ determined that Plaintiff has mild restrictions in daily living: Plaintiff sleeps 10-12 hours a night, he spends his days listening to music, reading, playing video games, watching television, and "smoking pot."  The ALJ noted that Plaintiff stated that at times he does not "take care of himself very well," but he did indicate that he bathes nearly every day and is able to attend to all of his personal needs.

The ALJ also found that Plaintiff has moderate limitations in social functioning.  The ALJ noted that Plaintiff lives with his mother, and other than his aunt and one good friend, he does not frequently interact with anyone other than medical providers.

---

[3]Plaintiff does not appear to challenge the ALJ's findings with regard to Paragraph C.

The ALJ also noted that Plaintiff was courteous and appropriate when doing so.

With regard to concentration, persistence or pace, the ALJ found that Plaintiff has moderate difficulties.  The ALJ recognized Plaintiff's reports about hallucinations and voices, but he also noted the report of the state agency psychological consultant, who found when he evaluated Plaintiff that there was "no evidence that any mood, thought or attention disorder interfered with his ability to respond."  (R. at 279.)  The ALJ also considered Plaintiff's testimony regarding his ability to concentrate on his reading and video games and that he can watch a couple of TV shows or a movie without difficulty.

As for episodes of decompensation, the ALJ noted that Plaintiff has experienced two episodes--twice attempting suicide and being discharged from employment for eating toppings off of a customer's pizza.  The ALJ found, however, that Plaintiff scored a "very functional 75" on his most recent Assessment of Global Functioning.

Plaintiff objects to all of these findings.  First, he argues that the ALJ's determination that his restrictions on his daily living are only "mild" was in error because these activities are not indicative of daily living.  Plaintiff contends that daily living activities are "adaptive activities,"

such as cleaning, shopping, paying bills, caring to appropriately groom and attend to personal needs, using the telephone, and going to the post office.  Plaintiff argues that listening to music, reading, playing video games, watching television and smoking marijuana are "restricted or limited activities and are not adaptive and demonstrate marked or serious interference with function."  (Pl. Br. at 9.)  Next, Plaintiff argues that it is clear and convincing evidence that he has a marked or severe limitation with regard to social functioning because of his living situation and because he only has one friend.  Third, Plaintiff contends that even though he can concentrate on certain tasks at home, such as reading, watching TV, and playing video games, his ability to concentrate outside that supportive setting is markedly or severely compromised.  Finally, Plaintiff argues that the ALJ erred in the analysis of his decompensation because he did not consider the changes in his medication, the ALJ should take more care in considering the Global Assessment, and he misevaluated the other three factors.

Plaintiff's arguments are unavailing.  With regard to the ALJ's daily living assessment, Plaintiff's subjective disagreement with the categorization of his daily living activities is insufficient to demonstrate that the ALJ's decision on this issue is unsupportable.  See Perkins v. Barnhart, 79 Fed.

14

Appx. 512, 514-15 (3d Cir. 2003) (explaining that mere disagreement with the ALJ's conclusion that the plaintiff's depression symptoms were moderate not sufficient to override the ALJ's findings based on substantial evidence).  Further, it is questionable how Plaintiff's choice to listen to music, play video games, watch TV, read and use marijuana evidences his inability to clean, shop, use the telephone or go to the post office.  Simply choosing to play video games instead of using the telephone does not automatically indicate that a person has a marked impairment with daily living activities.

With regard to social functioning, the regulations define social functioning as the "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers."  Appendix 1 to Subpart P of Part 404.  Impaired social functioning is demonstrated by, "for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation."  Id.  Strength in social functioning is demonstrated by the "ability to initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities."  Id.  Cooperative behaviors,

consideration for others, awareness of others' feelings, and social maturity are also considered.  Id.

Plaintiff's argument that his living situation, having one friend, and reporting that he feels socially isolated means he has a marked or severe limitation does not fully represent the ALJ's findings.  The ALJ recognized these points, but he also saw that Plaintiff had the ability to interact with others appropriately and courteously.  Further, the ALJ did not find no impairment, or even a mild impairment, but rather a moderate impairment.  Again, Plaintiff's subjective difference of opinion as to the degree of impairment is insufficient to supplant the ALJ's finding that Plaintiff is moderately impaired in social situations.  See Perkins, 79 Fed. Appx. at 514-15.

Similarly, Plaintiff's subjective dissatisfaction with the ALJ's determination that Plaintiff has moderate problems with concentration is insufficient to warrant remand.  "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.  Limitations in concentration, persistence, or pace are best observed in work settings, but may also be reflected by limitations in other settings."  Appendix 1 to Subpart P of Part 404.  The ALJ found that Plaintiff's daily activities required a

certain degree of concentration, and Plaintiff testified to being able to sustain a certain level of concentration and attention in order to read, watch TV, and play video games.  Thus, substantial evidence supports the ALJ's determination on this issue.[4]

With regard to the analysis of the decompensation factor, "episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.  Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two).  Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the

---

[4]The regulations further provide, "In addition, major limitations in this area can often be assessed through clinical examination or psychological testing.  Wherever possible, however, a mental status examination or psychological test data should be supplemented by other available evidence."  Plaintiff challenges the ALJ's consideration of the Assessment of Global Functioning in his analysis of Plaintiff's decompensation, but it is the regulation for determining concentration, persistence or pace that cautions the ALJ not to exclusively rely upon it. The regulation regarding decompensation does not contain a similar provision.  Even if the ALJ considered the test in his analysis of Plaintiff's concentration, the ALJ supplemented that test with Plaintiff's own testimony.

need for a more structured psychological support system (e.g.,
hospitalizations, placement in a halfway house, or a highly
structured and directing household); or other relevant
information in the record about the existence, severity, and
duration of the episode."  Appendix 1 to Subpart P of Part 404.
A claimant must have repeated episodes for this factor to fall in
the claimant's favor.  The term repeated episodes of
decompensation means "three episodes within 1 year, or an average
of once every 4 months, each lasting for at least 2 weeks."  Id.

     In this case, the ALJ recognized that Plaintiff had
experienced decompensation in the past, but that these episodes
did not classify as "repeated episodes."  Further, the ALJ
recognized that Plaintiff was currently "very functional."  Thus,
substantial evidence supports the ALJ's findings on this issue.

     Overall, substantial evidence supports the ALJ's findings as
to Plaintiff's functional limitations, and therefore, the Court
cannot find that the ALJ erred in that determination.[5]

     **2.   Whether the ALJ's determination of Plaintiff's mental
          residual functional capacity is supported by
          substantial evidence**

     After determining that Plaintiff's mental impairment did not

---

     [5]Even if the ALJ erred on one of these findings, in
order to satisfy Paragraph B, the ALJ would have been
required to find only two marked or severe impairments,
rather than on all four.

meet a listed impairment, but that it was still considered
severe, the ALJ was required to consider Plaintiff's residual
functional capacity.  The ALJ found that Plaintiff did not have
the residual functional capacity to perform his past relevant
work, but he found that Plaintiff did have the RFC to perform
other jobs in the national economy, such as a packer or an
inspector.  Plaintiff argues that this finding is in error
because it is based on a flawed analysis of his functional
limitations.  Because, however, the Court has found that the
ALJ's analysis on Plaintiff's functional limitations was not
flawed, Plaintiff's argument as to the consideration of his RFC
is without merit.

   3.   **Whether the ALJ erred in relying upon a flawed
        hypothetical question he presented to the vocational
        expert**

     The ALJ found that Plaintiff has the RFC to perform light
work, limited to simple, unskilled work with restricted social
interactions due to the symptoms of his mental impairments.  To
assist in that determination, the ALJ relied on the Vocational
Expert's testimony in determining that Plaintiff was not capable
of performing his past relevant work, but that he was capable of
performing other jobs available in the national economy.
Plaintiff argues that the ALJ's hypothetical to the VE was

incomplete in that the ALJ did not list all of Plaintiff's impairments when making his hypothetical.  He also argues that the VE stated that an individual could not be employable unless he was no longer experiencing hallucinations.  Overall, Plaintiff concludes, "The record clearly supports more restrictions than simply, unskilled work with limited social interaction."  (Pl. Br. at 14.)

Plaintiff's arguments are unpersuasive.  First, Plaintiff does not articulate what impairments the ALJ failed to include in the hypothetical.[6]  Second, Plaintiff does not articulate what other restrictions are "clearly" supported by the record.  Third, the VE does not state that someone must be completely free of hallucinations in order to be employable, but rather opines that they must be controlled and not severe.[7]  Thus, the ALJ did not

---

[6]Correspondingly, although the hypotheticals posed to vocational experts by an ALJ during the RFC analysis "must reflect all of a claimant's impairments that are supported by the record," Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987), a condition that does not result in any functional impairment is not relevant to the RFC analysis, Wimberly, 128 Fed. Appx. at 863; see also Burns v. Barnhart, 312 F.2d 113, 123 (3d Cir. 1987) (citation omitted) (stating that even though a hypothetical must include all of a Plaintiff's impairments, those impairments must be based on "medically undisputed evidence of specific impairments").

[7]The Court questions whether the Vocational Expert's analysis on the nature of hallucinations and their effect on employability can be credited regardless of her position on the issue.  As the ALJ noted in response to Plaintiff's counsel's question of the VE on this issue, she is not a

err, and Plaintiff's case will not be remanded on this basis.

## III. Conclusion

For the reasons expressed above, the ALJ's determination that Plaintiff was not totally disabled is supported by substantial evidence.  Accordingly, the decision of the ALJ is affirmed.  An accompanying Order will be issued.


Date: December 9, 2009          s/ Noel L. Hillman

                                NOEL L. HILLMAN, U.S.D.J.

---

doctor.  The Court only references her testimony on this issue to refute Plaintiff's characterization of it.

21